IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

                                      OPINION AND ORDER

        Plaintiff,

                                      18-cv-805-bbc

    v.

PML SERVICES LLC, D/B/A IHG ARMY HOTELS
FORT MCCOY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Equal Employment Opportunity Commission brought this lawsuit on behalf of Leigh Hancock, who worked for defendant PML Services, LLC as a housekeeper at a hotel in Fort McCoy.  Plaintiff contends that Hancock is disabled by a seizure disorder, and that defendant failed to accommodate Hancock and discharged her because of her disability.

        Defendant has filed a motion for summary judgment, contending that plaintiff's claim fails because plaintiff has not shown that Hancock is disabled, that she could perform the essential functions of the housekeeper position, that she was terminated because of her disability or that defendant failed to accommodate her.  I conclude that there are genuine disputes of material fact that preclude summary judgment.  Therefore, I am denying defendant's motion.

        From the parties' proposed findings of facts and responses, I find the following facts to be material and undisputed unless otherwise noted.

1

UNDISPUTED FACTS

A. <u>The Parties</u>

Defendant PML Services, LLC manages a hotel on the United States Army post at Fort McCoy. The hotel provides lodging for army personnel who visit Fort McCoy. In January 2015, defendant hired Leigh Hancock to work as a housekeeper at the hotel.

B. <u>Hancock's Seizure Condition</u>

Hancock has taken various medications for seizures since 2006. Her current treating neurologist, Dr. Ragasri Kumar, has given her a diagnosis of complex partial epilepsy with aura and secondary generalized tonic clonic seizures. (Although defendant contends that this diagnosis might have post-dated Hancock's employment with defendant, plaintiff has submitted evidence showing that Dr. Kumar gave Hancock this diagnosis in September 2014. Dkt. #41-1 at 20.) According to Dr. Kumar, Hancock's epilepsy substantially limits the functioning of her neurological system and can cause seizures.

Hancock usually experiences about one seizure each year, but sometimes experiences more than one in a year. When Hancock has a seizure, she can experience limitations in concentration and physical movement, as well as mental fogginess, difficulty reading and understanding words, shaking, fatigue, stiffness, clumsiness and pain. The limitations that Hancock experiences are temporary and typically resolve within two to five days. Dr. Kumar has advised Hancock to take two to five days to recover when she experiences a seizure. When Hancock does not take the time to rest, her recovery takes longer. Hancock does not

seek medical treatment after every seizure. Some seizures are more serious than others and some seizures result in secondary injuries that require medical examination, but others do not. Dr. Kumar monitors Hancock's treatment through periodic medical visits in which Hancock reports any recent seizure activity. According to Kumar, no particular treatment is required for a seizure that lasts less than five minutes.

### C. Hancock's Employment with Defendant

When defendant hired Hancock as a housekeeper in January 2015, Hancock's supervisor was Kathy Mitchell, the housekeeping manager. Mitchell reported to Michael Bayerl, the general manager of the hotel. Hancock's first day of employment was January 21, 2015. The first 90 days of Hancock's employment were considered to be a probationary period, during which defendant would evaluate Hancock's performance against defendant's company standards. Hancock was told that defendant would enforce its policies more strictly during the probationary period, and that attendance was very important.

Hancock was given an employee handbook that contained defendant's employee policies. One of the policies was titled "returning to work after illness or temporary disabilities," and stated that:

> Any time you are away from work, you may be required to provide your supervisor with a physician statement from your doctor. In all cases where the absence due to illness or temporary disability is for three or more consecutive workdays you'll be required to provide your supervisor with a doctor's release for return to work on the date of you return.

Defendant also had a "Leave of absence toolkit," which was a set of forms and

guidelines for managers to follow when an employee sought a leave of absence or other accommodation for a disability. The toolkit provided information about how managers should request health information from employees and about the types of accommodations an employee might need.

Hancock's housekeeping shifts generally started around 8:00 in the morning and ended when all of the rooms had been cleaned. The amount of time that Hancock worked each day varied depending on how many rooms she had to clean and how long it took to clean each room. Including Hancock, ten housekeepers worked at the Fort McCoy hotel during the relevant time period. The housekeeping staff helped each other clean rooms, so that all of the housekeepers ended their shifts at the same time. When a housekeeping employee called in sick, another employees might be called in, or Supervisor Mitchell would help perform housekeeping tasks.

On Tuesday, March 31, 2015, Hancock worked a housekeeping shift. After her shift, she went home. She had a seizure in front of her son. (Defendant disputes whether Hancock had a seizure, stating that Hancock is not qualified to determine whether she had a seizure. Defendant's objection is not persuasive. Hancock has submitted medical records showing that she has been treated for seizures for several years, and a jury would be entitled to credit Hancock's testimony about what she experienced on March 31.) After the seizure, Hancock's body was sore all over, she was confused and she had pain that lasted for several days. She did not have any physical injuries though, and she did not go to the emergency room or call her doctor.

4

Hancock was not scheduled to work the day after her seizure, April 1, but she was scheduled to work on April 2 and 3. Hancock was scheduled to be off the day after her seizure, Wednesday, April 1, 2015, and she was scheduled to be off on Friday and Saturday, April 4 and April 5. However, Hancock was scheduled to be at work at 8:00 a.m. on Thursday, April 2 and on Friday, April 3. Hancock texted Mitchell sometime after her seizure on March 31, notifying Mitchell that she had had a seizure and stating that she wanted to take the rest of the week off from work to recover. Mitchell confirmed that Hancock could take the rest of the week off.

For the three days following her seizure, Hancock spent most of her time resting to recover from the pain and soreness caused by the seizure. However, on April 2, Hancock drove herself to the hotel to pick up her paycheck. Mitchell says she spoke with Hancock, though Hancock does not recall speaking with Mitchell. Mitchell says that she did not observe anything that indicated to her that Hancock had experienced a seizure or that she needed to be absent from work.

The parties dispute whether Mitchell told Hancock that she would need to bring in a doctor's note when she returned to work the following week. Mitchell says she told Hancock that she needed to bring in a doctor's note, but Hancock denies ever being asked to bring in a doctor's note by anyone at the hotel. Although defendant contends that Hancock admitted at her deposition that Mitchell might have asked her to bring a doctor's note, defendant's argument is not persuasive. At her deposition, Hancock answered "No," to the question: "Do you recall [Mitchell] telling you or reminding you that you were going

5

to need a doctor's release to return?" Dkt. #27 at 25. Hancock was simply answering a "yes" or "no" question, and was not admitting that Mitchell might have asked her about a doctor's note. Later in her deposition, Hancock stated that no one had asked her to provide a medical excuse for her absences. Id. at 26.

### D. April 6 Termination Meeting

Hancock was asked to come to the hotel and meet with Mitchell and Bayerl on April 6. (It is not clear from the record when Hancock was asked to meet with Mitchell and Bayerl.) Sometime before the meeting, Mitchell spoke to Bayerl about Hancock's absences. (Hancock had also missed a day of work in February 2015 for stomach problems.) Bayerl decided that he was going to terminate Hancock's employment. (Hancock was worried that she was going to be fired, so she recorded the April 6 meeting on her phone. Plaintiff filed a transcript of the meeting with the court. Dkt. #39-1.)

Mitchell told Hancock at the meeting that Hancock's work was "wonderful" and that Mitchell would provide Hancock with a good reference. However, Mitchell and Bayerl both told Hancock that her absences were unacceptable, particularly during the probationary period. In particular, Bayerl told Hancock that he was terminating her based on "grave concerns" about Hancock's "ability for attendance." Dkt. #39-1 at 4. He said that Hancock's termination was "about attendance and availability to work . . . and unfortunately, you have had too many absences in a short period of time." Id. at 5.

Hancock stated that her absences after her seizure were an "uncontrollable situation."

Id. at 4. Bayerl responded that, "I wasn't going to go down that road because . . . You did not disclose this before we hired you." Id. Hancock responded that, "I legally did not have to," to which Bayerl stated, "and that's fine, okay. I'm not going to deal with that now that I know it." Id. Mitchell also said, "You know, your medical issues aside, that has nothing to do with why you are here. Why you are here is because you're missing – you missed three days, which is two more than I would have permitted anybody in a 90-day span of time." Id. at 7. Mitchell used the example of calling in with the sniffles as she explained the difficulties of asking coworkers to work when one person is sick. Hancock stated that sniffles are different from her health problem, and Mitchell agreed, stating that, "It is. And your health concerns aside, I don't have any control over that. And legally, that's not why you're here. Legally why you're here – why you are here is because of your attendance." Id. at 6.

Hancock stated during the meeting that she could have returned to work on Thursday, April 2, if she had been "absolutely needed." Id. at 5. Hancock also brought documents about seizure disorders that she had printed off from the website WebMD. She intended to show the documents to Mitchell and Bayerl to explain that even with seizures, she could do her job but might need leave to recover after a seizure. Bayerl did not accept the documents. He stated, "I assume you brought me some documents or something. That's great, and I'm not going to use that as – as a reason for termination." Id. at 5. At the meeting, neither Bayerl nor Mitchell asked Hancock for medical documentation or a note from Hancock's doctor excusing her absences from the previous week. Nor did anyone

mention a previous request for a doctor's note, state that Hancock had refused to provide a doctor's note or suggest that Hancock's request for days off was illegitimate.

OPINION

Plaintiff contends that defendant failed to accommodate Leigh Hancock's disability and terminated her employment because of a disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)–(b), which makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." There are two types of discrimination claims that may be brought under the ADA: (1) a disparate treatment claim, in which the employee alleges that the employer treated her differently because of the employee's disability, and (2) a failure to accommodate claim, in which the employee alleges that the employer refused to provide a reasonable accommodation. Curtis v. Costco Wholesale Corp., 807 F.3d 215, 224 (7th Cir. 2015). Plaintiff has alleged both types of claims.

To succeed on a disparate treatment claim, plaintiff must show that Hancock (1) is disabled; (2) is a qualified individual, meaning she is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) suffered an adverse employment action because of her disability. Majors v. General Electric Co., 714 F.3d 527, 533 (7th Cir. 2013). To succeed on a failure-to-accommodate claim, plaintiff must show that (1) Hancock is a qualified individual with a disability; (2) defendant was aware of Hancock's disability; and (3) defendant failed to reasonably accommodate that disability.

8

Ekstrand v. School District of Somerset, 583 F.3d 972, 975 (7th Cir. 2009).

In its motion for summary judgment, defendant challenges plaintiff's ability to establish each element of the claims. Defendant contends that plaintiff cannot show that Hancock is disabled, that defendant was aware of Hancock's disability, that Hancock could perform the essential functions of her job, that Hancock was terminated because of her disability, or that defendant denied Hancock a reasonable accommodation.

## A. Disability

Defendant argues that Hancock has not shown that she has a disability. The ADA's definition of "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C.A. § 12102(1)(A). A "major life activity" includes the operation of major bodily functions, including neurological functions. Id. § 12102(2)(B). In addition, a chronic condition that occurs intermittently or that flares up occasionally can qualify as a disability. Severson v. Heartland Woodcraft, Inc., 872 F.3d 476, 481 (7th Cir. 2017) (giving the examples of arthritis and lupus as disabilities that might require employees to take leave intermittently). The definition of disability in the ADA "shall be construed in favor of broad coverage." Id. § 12102(4)(A).

Defendant contends that plaintiff cannot prove that Hancock is disabled because plaintiff has not submitted expert testimony or medical evidence to establish that Hancock has a seizure disorder, that Hancock actually had a seizure caused by her seizure disorder on March 31, 2015, and that her seizure rendered her unable to work. Defendant also points

9

to a statement in Hancock's medical records in which a physician gave the opinion that some of Hancock's seizures were actually panic attacks. Defendant's arguments are not persuasive.

Plaintiff has submitted evidence from which a reasonable jury could conclude that Hancock's seizure disorder is a disability. Plaintiff submitted evidence from Hancock's doctor, Dr. Kumar, who stated that Hancock has a seizure disorder that substantially limits the functioning of Hancock's neurological system and can cause seizures. Kumar and Hancock have testified that when Hancock experiences a seizure, she can experience limitations in concentration and physical movement, as well as mental fogginess, difficulty reading and understanding words, shaking, fatigue, stiffness, clumsiness and pain, and that Hancock generally needs two to five days to recover from her symptoms.

In addition, Hancock's own testimony is sufficient to establish that she had a seizure on March 31, 2015 that rendered her unable to work. Hancock has been experiencing seizures for many years, and is competent to testify about what happened on March 31, why she concluded that she had had a seizure and how the seizure affected her. Defendant is free to cross-examine Hancock about the March 31 seizure and about the seriousness of Hancock's seizure disorder. However, construing the evidence in plaintiff's favor, a reasonable jury could conclude that Hancock's seizure disorder is a chronic disability that substantially limits Hancock's neurological functions and, on occasion, causes seizures, which limit her functioning in various ways.

B. <u>Ability to Perform Essential Job Functions</u>

Next, defendant contends that Hancock was not a "qualified person with a disability." The ADA forbids discrimination against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A "qualified individual" with a disability is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position." Id. § 12111(8). In this instance, there is no dispute that Hancock was able to perform the work required of a housekeeper. Mitchell, Hancock's supervisor, gave the opinion that Hancock's work was "wonderful" and that she gave "good, good work." However, defendant contends that Hancock was not a "qualified individual" because she did not have adequate attendance, which was an "essential function" of her housekeeping position.

Defendant's argument is not persuasive. Hancock was a part-time employee who missed two days of scheduled work to recover after a seizure. Her supervisor was able to fill in and help clean rooms in her absence. Hancock's seizures occur, on average, once a year. Defendant has not shown that Hancock's missing a few days each year to recover from a seizure amounts to her inability to perform the essential functions of her job.

Moreover, defendant's position regarding Hancock's absences appears to be contradictory. Defendant has stated that, if Hancock had brought in a doctor's note excusing her absences, Hancock would not have been terminated. Dkt. #43 at 9. However, if Hancock's absences would have been acceptable with a doctor's note, her absences did not render her unable to perform the essential functions of her job.

### C. Defendant's Awareness of Hancock's Disability

Defendant contends that it cannot have terminated Hancock because of her disability, and cannot be faulted for failing to accommodate her, because it was unaware that Hancock had a seizure disorder. Defendant says that Hancock's simply texting her supervisor and stating that she had a seizure is not sufficient to place defendant on notice that Hancock had a seizure disorder that required accommodation.

However, a reasonable jury could conclude that defendant was aware of Hancock's seizure disorder from Hancock's text, her statements about her condition at the April 6 termination meeting and her attempt to bring in documents about her condition. "After an employee has disclosed that she has a disability, the ADA requires an employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." Spurling v. C & M Fine Pack, Inc., 739 F.3d 1055, 1061 (7th Cir. 2014) (citations omitted). In this instance, Hancock disclosed her disability to defendant by stating that she had had a seizure and needed some time off to recover. The transcript of the termination hearing shows that Mitchell and Bayerl were aware that Hancock had a seizure disorder, as they both referred to Hancock's "medical issues" and "health concerns."

Defendant contends that even if Hancock told defendant about her seizure disorder, she was responsible for the breakdown in the "interactive process" because she refused to provide a doctor's note excusing her absences. However, there is a genuine factual dispute

about whether Mitchell, Bayerl or anyone else told Hancock that she needed a doctor's note. Taking into account Hancock's testimony and the transcript of the April 6 termination meeting, a reasonable jury could find that Hancock was never asked for a doctor's note or any medical documentation about her seizure disorder.

### D. Causation

Defendant contends that plaintiff cannot show that Hancock was terminated because of her disability. Instead, defendant argues, the evidence shows that it terminated Hancock because she failed to provide medical documentation required by defendant's attendance policy. As discussed above, however, there is a factual dispute about whether Mitchell, Bayerl or anyone else ever asked Hancock to provide medical documentation about her seizure disorder or a doctor's note excusing her absences.

In addition, the transcript from the April 6 termination meeting supports plaintiff's theory that defendant terminated Hancock because of her seizure disorder. No one mentioned a doctor's note at the meeting, and Bayerl declined to review the documents that Hancock did bring. In addition, although Mitchell and Bayerl stated repeatedly that they were not terminating Hancock because of her medical condition, they both made statements suggesting that they were concerned that her seizure disorder would cause too many absences. For example, a reasonable jury could find that Bayerl's statements that he had "grave concerns" about Hancock's "ability for attendance," and that Hancock failed to "disclose" her seizure disorder before she was hired, show that Bayerl terminated Hancock

because of her disability. Therefore, there are genuine disputes of material fact about the reason that defendant terminated Hancock.

### E. Reasonable Accommodation

Finally, I conclude that there are genuine factual disputes about whether defendant failed to provide Hancock a reasonable accommodation. Hancock asked to take two days off to recover from a seizure. Although defendant contends that accommodating Hancock's request placed a burden on staff, defendant has submitted little evidence to show that the burden was significant. In addition, Hancock has submitted evidence showing that her seizures are rare, suggesting that her requests for time off would be infrequent.

Defendant also argues that Hancock did not actually need time off to recover, because she was able to drive herself to work to pick up her paycheck two days after her seizure and because she stated at the termination meeting that she could have come to work if she was "absolutely needed." However, as plaintiff points out, Hancock has stated that if she had worked, she would not have been able to perform her job duties at the expected pace or quality because she was still recovering from her seizure. In addition, driving to work to pick up a paycheck is not the same as working an entire shift of physical labor. In sum, there are genuine disputes of material fact regarding whether defendant could have provided Hancock a reasonable accommodation for her disability, but failed to do so. Therefore, this case must proceed to trial.

ORDER

IT IS ORDERED that defendant PML Services, LLC's motion for summary judgment, dkt. #22, is DENIED.

Entered this 1st day of July, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge